IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2009

## LUIZ GOMEZ and FRANKLIN DELACRUZ v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
**No. F-9586   Larry B. Stanley, Jr., Judge**

---

**No. M2008-01868-CCA-R3-PC - Filed December 10, 2009**

---

Petitioners, Luiz Gomez and Franklin Delacruz, each pled guilty to second degree murder and two counts of aggravated arson in Warren County in exchange for effective sentences of thirty-six years. Petitioners then each filed timely petitions for post-conviction relief. After a joint hearing on the petitions for relief, the post-conviction court denied relief, finding that Petitioners did not receive ineffective assistance of counsel and that their guilty pleas were entered knowingly, voluntarily, and intelligently. After a review of the record, we determine that Petitioners have failed to show that they received ineffective assistance of counsel or that their guilty pleas were entered involuntarily. Accordingly, the judgments of the post-conviction court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Bud Sharp, McMinnville, Tennessee, for appellant, Luiz Gomez.
Robert Brooks, Memphis, Tennessee, for appellant, Franklin Delacruz.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; and Rodney C. Strong, District Attorney General,, for the appellee, State of Tennessee.

## OPINION

*Factual Background*

In September of 2003, a special session of the Warren County Grand Jury returned an indictment against Franklin Delacruz, Luiz Gomez, and Ruben Pimentel for one count of first degree murder, one count of felony murder, four counts of aggravated arson and one count of conspiracy to commit first degree murder. The three men were indicted for their role in the death of Gina

Thompson. Petitioners assisted Pimentel in setting Ms. Thompson on fire while she slept in her trailer. The men mistakenly believed Ms. Thompson had stolen cocaine from them. Prior to trial, the State made the decision to pursue the death penalty.

On June 3, 2005, Petitioner Gomez and Petitioner Delacruz[1] entered into a negotiated plea agreement with the State. The agreement specified that each Petitioner would plead guilty to second degree murder and two counts of aggravated arson. The remaining counts of the indictment were dismissed. In exchange for the guilty pleas, Petitioners received a thirty-six year sentence to be served at 100% for the second degree murder conviction. Petitioners received an eighteen-year sentence to be served at 100% for each aggravated arson conviction. The sentences for aggravated arson were ordered to run consecutively to each other but concurrently to the sentence for second degree murder, for a total effective sentence of thirty-six years at 100% in the Department of Correction.

After the entry of the guilty pleas, Petitioners filed separate pro se petitions for post-conviction relief. In their petitions, they argued that they received ineffective assistance of counsel and that their guilty pleas were unknowingly and involuntarily entered.

The post-conviction court appointed counsel and held a hearing on the petitions for post-conviction relief.

*Petitioner Gomez*

At the hearing, Petitioner Gomez informed the trial court that he did not understand the charges because he spoke Spanish rather than English and that he was pressured to plead guilty by his two attorneys. The trial court provided an interpreter for Petitioner Gomez during all phases of the court proceedings. Petitioner Gomez claimed that his trial counsel told him to plead guilty because a jury would convict him based on the evidence and the only way he could avoid the death penalty would be to negotiate a plea agreement. Petitioner Gomez admitted that he was able to recall "some" of the evidence that trial counsel told him would be introduced at trial. Petitioner Gomez complained that the attorneys did not go over "all" the evidence and did not point out any evidence that would be favorable to the defense at trial. Later, Petitioner Gomez admitted that counsel had discussed the facts of the case with him on a number of occasions, even showing him a translated version of his videotaped statement.

Next, Petitioner Gomez claimed that he did not understand the plea agreement or hearing. He admitted that one of his trial counsel had gone over the plea agreement with him but complained that the agreement was in English and no interpreter was present at the time. Later on during the hearing, Petitioner Gomez agreed that both trial counsel met with him at the jail and went over the plea agreement while a Spanish interpreter was present. According to him, the interpreter left before he signed the agreement. Petitioner Gomez admitted that even though the agreement was in English,

---

[1] The disposition of the indictment against Ruben Pimentel is unclear from the record on appeal.

he understood the contents of the deal prior to signing it. He claimed that the interpreter did not tell him what was contained in the document. Petitioner Gomez also admitted that he had been in court in New York and had previously entered a guilty plea in a burglary case.

Petitioner Gomez recalled the details of the plea hearing, including the plea colloquy in which the trial court asked questions about his rights. Petitioner Gomez claimed that he was not telling the truth when the trial court asked if he wanted to enter the plea. He did not answer negatively to any of the trial court's questions because, according to Petitioner Gomez, his trial counsel told him to answer "yes" to all of the judge's questions. Petitioner Gomez acknowledged that he expressed his understanding of the agreement during the plea hearing, including the part in which he understood that his sentence would be the same as Petitioner Delacruz. Further, Petitioner was in court when Petitioner Delacruz signed his petition, so he had already heard the agreement translated into Spanish before the entry of his plea.

Lead trial counsel for Petitioner Gomez testified that he discussed trial strategy with Petitioner, including the lack of "good facts" and the multitude of "bad facts that we were going to have to either ignore or to explain away, which [was] going to be difficult to do" at trial. Trial counsel explained to the trial court that there were facts that could be used in mitigation during the sentencing phase of trial but would be detrimental during the guilt phase of trial.

Lead trial counsel admitted that an interpreter was not always present during their meetings with Petitioner Gomez. Trial counsel did not feel that communication was an issue with regard to simple information about the case. Trial counsel also admitted that an interpreter was not present when Petitioner signed the agreement but that an interpreter went over the agreement with Petitioner Gomez. According to trial counsel, Petitioner Gomez never seemed to have reservations about taking the plea agreement. The decision was left up to Petitioner and he chose to accept the plea.

*Petitioner Delacruz*

Petitioner Delacruz also testified at the post-conviction hearing. He recalled meeting with his two attorneys as well as the investigators and interpreters on the day prior to the plea. In his words, they "explained all the evidence that [the State] had against me and that's when they told me that I did not have good probabilities or that I was not likely to be successful." Petitioner Delacruz had turned down a prior plea offer because he claimed that he was not guilty. At this meeting, Petitioner felt that he had "no option" even though he did not want to take the plea agreement. Petitioner Delacruz was convinced that he would be found guilty if he went to trial. The investigators told him "[t]hat if we went to trial that I would be found guilty and if I didn't get the death penalty they would give me a lot more time than what was being offered."

Petitioner Delacruz claimed that on the day prior to the plea agreement the interpreter left prior to his attorney's arrival.[2] He insisted that he did not discuss the plea agreement with the interpreter. When the attorneys arrived, they did not discuss the plea agreement, and Petitioner Delacruz signed it even though he did not understand them or the agreement. In fact, Petitioner Delacruz informed the post-conviction court that his attorneys visited him "many times" without an interpreter and that he could not understand them because he did not speak English.

Petitioner Delacruz felt that he had "no chance of success" so he entered the plea even though he did not understand any English.

Petitioner Delacruz recalled the day of the plea hearing. He testified at the hearing that he had never been informed that he had a right to go to trial. However, upon further questioning, Petitioner Delacruz informed the post-conviction court that he had been told by his attorneys that he could have a trial but that the jury would not "believe" him and would find against him even though he was "not guilty of the crime." Petitioner Delacruz claimed that one of his trial counsel told him that he would not be permitted to testify at trial.

Like Petitioner Gomez, Petitioner Delacruz admitted at the post-conviction hearing that he had been to court in New York and had pled guilty "two or three times" in the past. As for the plea hearing at issue herein, Petitioner Delacruz admitted that he expressed his understanding of the plea to the trial court but claimed that he "didn't have any choice but to say yes" and had "no choice but to sign [it]." In fact, he stated that he "felt like [he] was stuck between a rock and a hard place."

Assistant trial counsel testified that he represented Petitioner Delacruz at the plea hearing and had previously handled between fifteen and twenty first degree murder cases. The defense team consisted of two attorneys. Assistant trial counsel recalled meeting with Petitioner Delacruz on a frequent basis and determined when there was going to be "substantive conversation," it was "clear" that they would need an interpreter.

Assistant trial counsel recalled that the plea offer of thirty-six years was relayed to Petitioner Delacruz in the late part of May or the first few days of June of 2005. At this meeting, Petitioner Delacruz informed trial counsel that he was not interested in the offer.

Assistant trial counsel denied that he told Petitioner Delacruz that he would be prevented from testifying at trial. In fact, he recalled telling Petitioner that "it was important that he did testify" and thought that the defense team would probably "encourage him to testify" if the case went to trial.

After the first meeting at which the plea offer was conveyed, Petitioner Delacruz met with the investigators. Soon after this meeting, trial counsel met with him again. At this meeting, "it was communicated to [trial counsel] by Mr. Delacruz that indeed he did want to take the deal. He wasn't excited about it but he did want to go ahead and do it." Assistant trial counsel insisted that he did

---

[2] Petitioner Delacruz testified that only one of his attorneys attended this meeting.

-4-

not tell Petitioner Delacruz that his only option was to take the deal. In fact, assistant trial counsel testified that he "always make[s] it very clear they have the right to go to trial and that's not my decision, it's theirs."

Assistant trial counsel informed the post-conviction court that he explained the legal issues to Petitioner Delacruz who "had a difficult time understanding felony murder and understanding criminal responsibility . . . which is not uncommon . . . ." When all was said and done, assistant trial counsel felt like Petitioner Delacruz understood the concepts and assistant trial counsel was "firmly convinced" that Petitioner Delacruz had an understanding of the legal situation.

At the conclusion of the hearing, the post-conviction court denied relief from the bench. The post-conviction court later entered an order in each case denying the petitions for relief. In the orders, the post-conviction court specifically determined that each Petitioner received effective assistance of counsel. Next, the post-conviction court determined that, based on the evidence presented, each Petitioner understood what they were doing when they entered their plea agreements. Finally, the post-conviction court found that there was "no undue influence" by the attorneys to try to "coerce" Petitioners to enter into a plea agreement.

Petitioners Gomez and Delacruz filed timely notices of appeal, challenging the post-conviction court's denial of post-conviction relief.

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing (a) that the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.

1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland*, 466 U.S. at 694. Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

*Petitioner Gomez*

On appeal, Petitioner Gomez contends that he did not receive "effective assistance of counsel" because he "ended up with a plea he didn't understand . . . [and] didn't fully appreciate the consequences of his actions" and that this led to an adverse effect on the defense, proving the "second prong" of ineffective assistance of counsel. Petitioner seems to argue that the allegedly deficient performance by his trial counsel led to a presumptively prejudicial effect, proving that he received ineffective assistance of counsel. Petitioner also argues that his guilty plea was not knowingly or voluntarily entered because he was unable to understand the plea "because of his lack of English."

In the case herein, Petitioner Gomez has failed to show that his trial counsel were deficient, much less presumptively prejudicial as he argues. Moreover, Petitioner Gomez has failed to show that but for trial counsel's alleged deficiencies, he would have refused to plead guilty and insisted on going to trial. The transcript of the guilty plea hearing reflects that the trial court went to great lengths to discuss the ramifications of the guilty plea with Petitioner Gomez. There was an interpreter present who translated everything at the hearing. Petitioner Gomez was thoroughly questioned by the trial court to ascertain whether he understood the effects of the plea.

Petitioner Gomez complains that he had no choice but to plead guilty, he did not understand what he was doing, and trial counsel did not present "all the issues." Further, he complains that the plea offer was not explained in Spanish, and he was led to believe by trial counsel that his case was hopeless. In other words, that he was coerced into pleading guilty. After hearing the evidence, the post-conviction court accredited the testimony of trial counsel and discredited Petitioner Gomez's testimony. The post-conviction court specifically found that Petitioner Gomez "lied under oath" and that he "understood what he was doing" when he pled guilty. The plea hearing indicates that Petitioner knew what he was doing, understood the plea, and agreed that it was what he wanted to do to resolve the case. Petitioner Gomez himself admitted that he had previously entered a guilty plea in New York. The post-conviction court noted that it was a "tough case" in which the attorneys would "be remiss if they had not been very adamant to their clients about what could and might happen in the case" but that their advice to Petitioner Gomez did not amount to "undue influence." Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. Petitioner Gomez is not entitled to relief.

*Petitioner Delacruz*

On appeal, Petitioner Delacruz argues that the post-conviction court "committed an error in finding that his guilty pleas was [sic] entered knowingly and voluntarily" where the proof established that he was "reluctant" to enter the guilty plea and even "refused" the plea prior to the guilty plea hearing and did not understand the charges that he was facing. Petitioner also alleges that post-conviction relief is appropriate when "the guilty plea does not conform to the due process standard."

In the case herein, Petitioner Delacruz has failed to show that his trial counsel were deficient. Moreover, Petitioner Delacruz has failed to show that but for trial counsel's alleged deficiencies, he would have refused to plead guilty and insisted on going to trial. Again, the transcript of the guilty plea hearing reflects that the trial court went to great lengths to discuss the ramifications of the guilty plea with Petitioner Delacruz. As with Petitioner Gomez, there was an interpreter present who translated everything at the hearing. Petitioner Delacruz was repeatedly asked by the trial court if he understood the effects of the plea.

Petitioner Delacruz complains that he had no choice but to plead guilty and he did not understand what he was doing. Specifically, he complains that counsel's undue influence led him to believe he had "no realistic choice" but to plead guilty. In other words, that he was coerced into pleading guilty. The post-conviction court accredited the testimony of trial counsel, finding that there was no deficient representation on the part of his attorneys. In fact, the testimony from trial counsel indicated that they were careful to have an interpreter present when they were having meetings with Petitioner Delacruz that dealt with substantive matters. While Petitioner Delacruz initially did not want to plead guilty, he decided after the initial meeting to accept the offer. We recognize that because of a language barrier, Petitioner Delacruz may have had difficulty understanding portions of the plea, specifically, the definitions of felony murder and criminal responsibility. However, the testimony from trial counsel indicated that these terms were fully and completely explained to Petitioner Delacruz through an interpreter prior to the entry of the plea. Finally, even though Petitioner Delacruz claims that he had no choice but to plead guilty, the plea hearing indicates that Petitioner knew what he was doing, understood the plea, and agreed that it was what he wanted to do to resolve the case. Petitioner Delacruz himself admitted to the post-conviction court that he had prior experience with guilty pleas. The post-conviction court noted that the attorneys "went above and beyond what was required and did an outstanding job in preparing their cases." Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. Petitioner is not entitled to relief.

Petitioner Delacruz also makes an argument that his guilty plea did not comply with due process requirements. We concur in the State's assessment of Petitioner Delacruz's brief in that it makes a conclusory allegation without citing any authority to support this argument. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides that a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the

authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Because Petitioner Delacruz has failed to comply with Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Criminal Appeals Rule 10(b), he has waived this issue.

*Conclusion*

For the foregoing reasons, the judgments of the post-conviction court are affirmed.


_____
JERRY L. SMITH, JUDGE